IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RAE A. CARPENTER,            )
      Plaintiff,            )
                             )
v.                           )   2:10-CV-614
                             )
COMMISSIONER OF              )
SOCIAL SECURITY,             )
      Defendant.           )

MEMORANDUM and OPINION

Mitchell, M.J.:

Presently before the Court for disposition are cross motions for summary judgment. For the reasons set forth below, the plaintiff's motion for summary judgment (Document No.9) will be denied and the defendant's motion for summary judgment (Document No.13) will be granted.

On May 10, 2010, Rae A. Carpenter by her counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing her claim for Supplemental Security Income benefits under Sections 1614 and 1631 of the Act, as amended, 42 U.S.C. §1381 cf.

The instant application for Supplemental Security Income Benefits was filed on July 27, 2007 (R.103-109). On October 24, 2007, benefits were denied (R.75-79), and on December 5, 2007, the plaintiff requested a hearing (R.84). Pursuant to that request a hearing was held on December 12, 2008 (R.10-58). In a decision filed on February 11, 2009, an Administrative Law Judge denied benefits (R.61-74), and on March 19, 2009, the plaintiff requested reconsideration of that determination (R.8-9). On March 13, 2010, the Appeals

Council affirmed the prior determination (R.1-3). The instant complaint was filed on May 10, 2010.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act. Richardson v. Paralyze, 402 U.S. 389 (1971); Adorn v. Halala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Camber. 529 F.3d 198 (3d Cir.2008) and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir.1999)

The purpose of the Supplemental Security Income Program is to provide additional income to persons of limited resources who are aged, blind or disabled . 42 U.S.C. §1381; Chalmers v. Halala, 23 F. 3d 752 (3d Cir. 1994). To be eligible for such benefits, an individual's income must not exceed a certain established maximum and he/she must demonstrate certain eligibility requirements.

As set forth in 20 C.F.R. § 416.905(a) disability is defined as:

> the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

> be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than 12
> months...
>
> To meet this definition, you must have a severe impairment(s) that
> makes you unable to do your past relevant work... or any other
> substantial gainful work that exists in the national economy.

A physical or mental impairment is defined in 20 C.F.R. §416.908 as an:

> impairment [which] result[s] from anatomical, physiological, or
> psychological abnormalities which [are demonstrated] by
> medically acceptable clinical and laboratory diagnostic
> techniques.

For purposes of determining whether or not the plaintiff met the eligibility requirements, certain evidence was considered by the Commissioner.

At the hearing held on December 12, 2008 (R.10-58), the plaintiff appeared with counsel (R.12) and testified that she completed the eighth grade and has limited math and reading skills (R.15-17); that she lives with her two minor children (R.14) and that she worked as a babysitter and restaurant table cleaner (R.17,19).

The plaintiff also testified that she experiences constant pain due to fibromyalgia and arthritis and suffers from irritable bowel syndrome (R.21,22, 27); that she experiences frequent uncontrollable bowel movements (R.24,38); that she takes medication for pain but it does not help (R.27-28); that her mother and sister perform household chores for her (R.30-32,34); that she can walk very short distances and stand or walk for about a half hour (R.30-32); that she experiences difficulty sitting (R.32-33); that she watches television and listens to music (R.36); that she has difficulty concentrating (R.40); that she also suffers from carpal tunnel syndrome and can only use her hands for about twenty minutes (R.41,43); that she has difficulty lifting her hands above shoulder level (R.44) and that she experiences difficulty sleeping (R.45).

3

At the hearing, a vocational expert was called upon to testify (R.48-58). He characterized the plaintiff's past work as light and unskilled (R.48). When asked to assume an individual of the plaintiff's age, education and past work experience who could perform light work with a sit/stand option with limited hand involvement (R.48-49), the witness testified that such an individual could perform the plaintiff's past work and similar jobs which exist in large numbers (R.49-50). If that same individual was limited to sedentary work, the witness testified that there were still a large number of jobs she could perform, and that such positions could accommodate two extra short work breaks a day (R.50-51). However, where the individual had to make frequent unscheduled trips to the bathroom, the witness testified that the number of jobs available would be greatly reduced (R.54). And, if the breaks became more extended acceptability would be dependent on the employer and probably would preclude employment (R.54-56). Additionally, the witness testified that if the plaintiff's constant pain required her to be off task for than 10 to 15 percent of the time she would not be employable (R.57).

In addition, certain other evidence was considered.

The plaintiff attended physical therapy for right arm and leg pain between August 21, 2006 and September 12, 2006 (R.152-156).

On July 11, 2007, Robert S. Vandrak, D.O. recommended a right wrist splint for carpal tunnel syndrome (R.177).

The plaintiff was treated by Dr. Roberto Bendoni between July 13, 2006 and August 3, 2007 for irritable bowel syndrome and fibromyalgia, right shoulder and elbow pain and anxiety (R.165-172).

X-rays taken on August 20, 2007 revealed a suspected spur encroachment on the right side at C3-C4 with cervical straightening (R.174-175).

In a residual functional capacity assessment completed on September 24, 2007 (R.178-184), it was noted that the plaintiff could occasionally lift twenty pounds, frequently lift ten pounds and stand, walk or sit for about eight hours. It was concluded that the plaintiff's complaints were only partially credible.

In a report of a psychological evaluation conducted on October 2, 2007, Kirk M. Lunnen, Ph.D. diagnosed borderline intellectual functioning with a full-scale I.Q. of 77 (R.185-192).

In a residual mental capacity assessment completed on October 23, 2007, Roger Glover, Ph.D. diagnosed borderline intellectual functioning and an anxiety disorder. The limitations imposed were either not significant or only moderate. He concluded that the plaintiff could engage in competitive work on a sustained basis (R.193-209).

The plaintiff was treated by Robert S. Vandrak, D.O. between July 11, 2007 and June 2, 2008 and a diagnosis of possible mild right should rotator cuff atrophy, fibromyalgia, thoracic pain, bilateral knee arthritis, right carpal tunnel syndrome, right elbow epicondylitis and left kidney cyst was made (R.231-239).

The plaintiff was treated by Dr. Michael DeJesus between January 25, 2008 and June 11, 2008 and possible irritable bowel syndrome was diagnosed. An esophagogastro-duodenoscopy and colonoscopy were performed. The former was said to be normal and two polyps were removed during the latter procedure (R.210-230).

An EEG performed on September 9, 2008 was interpreted as being within normal limits (R.305-306).

In a report dated September 30, 2008, Dr. Michael Y. DeJesus diagnosed diarrhea predominant irritable bowel syndrome (R.307-309).

The plaintiff was treated by Dr. Roberto Bendoni between March 6, 2006 and October 1, 2008 for fibromyalgia, irritable bowel syndrome, liver and kidney cysts and general health maintenance (R.240-304).

In a report submitted on October 29, 2008, Dr. Bendoni indicated that the plaintiff could not perform any lifting and could stand, walk or sit for less than two hours. It was further reported that the plaintiff suffers from continuous generalized pain (R.310-313).

In a residual functional capacity report dated December 16, 2008, Robert S. Vandrak, D.O. observed that the plaintiff could occasionally lift up to five pounds and stand, walk or sit less than two hours (R.314-320).

> Based on the evidence presented, the Commissioner determined:
>
> The claimant has the following severe impairments: right shoulder rotator cuff arthroopathy; bilateral knee arthritis; fibromyalgia; chronic kidney disease (State II); right lateral epicondylitis; irritable bowel syndrome' osteoarthritis; and borderline intellectual functioning...
>
> The claimant's medically determinable mental impairment of **anxiety** does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere...
>
> Dr. Glover found that the evidence showed that Ms. Carpenter had experienced no more than mild restrictions of **activities of daily living** and the undersigned agrees...

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere...

Ms. Carpenter obtained a verbal IQ score of 74, a performance score of 84, and a full scale IQ score of 77, within borderline range, but not low enough to satisfy even the **threshold** requirements ...

Nor is there evidence of any musculoskeletal impairments listed [in the listing of qualifying impairments]...

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined ... except that she must have a sit/stand option; cannot climb, kneel, crawl, or crouch; can only occasionally reach overhead with the right arm; cannot work around hazards ... and is limited to unskilled work which is low stress, i.e., not at a production rate pace.

* * *

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the ... residual functional capacity assessment.

* * *

The undersigned has considered but not given controlling weight to an October 29, 2008, statement from Dr. Bendoni and a December 16, 2008, statement from Dr. Vandrak, solicited by counsel, and indicating that Ms. Carpenter would be unable to perform even sedentary work...

[T]he function of deciding whether an individual is under a "disability" within the meaning of the Social Security Act is the responsibility of the Administrative Law Judge. A statement by a

> physician or other treating source can be given weight only to the extent that it is supported by medical findings.
>
> A finding of total disability is not supported by the objective medical evidence, including Dr. Bendoni's and Vandrak's own treatment records...
>
> I note that the claimant's **work record** is poor...
>
> In sum, considering the claimant's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence; the opinion evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; factors that precipitate and aggravate the claimant's symptoms; the type, dosage, effectiveness, and side effects of any medications; treatment other than medication the claimant receives; any measures other than treatment the claimant uses; and other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms, it is concluded that the claimant retains the residual functional capacity established herein...
>
> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform...
>
> [T]he Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations [which exist in substantial numbers in the national economy]...
>
> The claimant has not been under a disability, as defined in the Social Security Act since July 27, 2007, the date the application was filed (R.66-73).

The evidence demonstrates that the plaintiff suffers from a number of maladies including a low IQ and musculoskeletal problems as well as irritable bowel syndrome. However, the Administrative Law Judge concluded that the plaintiff's allegations of the severity of those

symptoms are not supported by the record, and in fact conflict with some of the evidence presented by the plaintiff. Since the Commissioner is charged with resolving issues of credibility, Diaz v. Commissioner, 577 F.3d 500, 506 (3d Cir. 2009), this determination appears to be supported by the record. For this reason, we conclude that the decision of the Commissioner is supported by substantial evidence.

Summary judgment is appropriate where there are no material factual issues in dispute and the movant is entitled to judgment as a matter of law. Azsur v. Chase, 601 F.3d 212 (3d Cir. 2010). In the instant case there are no material issues of fact in dispute, and the findings of the Commissioner are supported by substantial evidence. For this reason, the plaintiff's motion for summary judgment will be denied, the defendant's motion for summary judgment will be granted and the decision of the Commissioner will be affirmed.

An appropriate Order will be entered.

ORDER

AND NOW, this 14th day of December, 2010, for the reasons set forth in the foregoing Memorandum,

IT IS ORDERED that the plaintiff's Motion for Summary Judgment(Document No.9) is DENIED;

IT IS FURTHER ORDERED that the defendant's Motion for Summary Judgment (Docket No 13) is GRANTED;

AND IT IS FURTHER ORDERED that the decision of the Commissioner is AFFIRMED and Judgment will be entered accordingly.

s/ Robert C. Mitchell<br>
United States Magistrate Judge